Please be seated. We're having growing pains with our first OA in Birmingham. I have a lawyer from Birmingham who showed up in Atlanta this morning. Hopefully things will get better as the week goes on. We have four cases to hear this morning and it's an interesting week. The case that had been scheduled to be heard first will be heard third. So the first case we're going to hear will be the Spears case. Counsel will be familiar with your arguments. We've read your briefs. We've read the authorities cited in your briefs. We've read at least portions of the record. So in the limited time that you have this morning, you should feel free to get straight to the heart of your argument. You do not need to educate us about what the case is about. We're probably going to have some questions for you this morning. If we do, be mindful of the clock. When the red light shines, it is time to wrap it up. If you're answering a question from the court, of course, you can finish your answer and you won't lose rebuttal time if that's something that you have available to you. You'll be on our time when we're asking questions. Our first case, Spears v. Patel. Mr. Hunter. Good morning, Your Honor. May it please the court. I'm Scott Hunter from Point Clear. Normally, you'll see me as a CJA lawyer with the AUSA's Mr. Gray and Mr. Bodder behind me. But I'm back to my civil roots today doing an appeal in a wage and hour case, as you know. I represent Rick Patel and his son, Sonny, of course, in Bay Inn and Suites of Loxley, a little hotel there north of I-10 on 59. You know, so yeah, we understand that and we understand what your case is about. You know, I understand, too, your argument about the son having individual liability as one of your main issues. Yes, Judge. I was going to tell you, I've got a fact issue and I've got a law issue. My fact issue is the individual liability on the son. The district court, when it adopted the magistrate's opinion, it did abuse its discretion in finding that Sonny was individually liable. The standard that they're supposed to go on in the Donovan v. New Floridian, which also happens to be a hotel case, is that anybody who is responsible for the business's compliance with the Fair Labor Standards Act, for doing all the wage and hour stuff, those are the ones that are supposed to be responsible. Is that the only part of the test? I mean, there certainly is language in some of the other cases that indicates that if you have supervisory responsibility over the employee's day-to-day work and you do some of the payroll FLSA compliance stuff, that that might be enough. You don't think that that exists here? The evidence here was that he didn't do any of the FLSA stuff. The evidence was, maybe you think that this finding is clearly erroneous, but there's a finding that he paid checks, he wrote checks. He would hand him his check, but his daddy wouldn't let him. Not just handed him, but he signed them, right? Yeah, his father did have him on the bank account, however, the amount that Mr. Spears was paid was at the direction of his father. That would be like ... It was discussed with his father, though, right? Excuse me? It was something they would have discussed. Well, yeah. The case throughout, for example, Ian, when he crossed him about, hey, what about all the wage and hour cases, asking about his other things with the payroll issues, for 25 pages of the transcript, his answer, I'm going to paraphrase it, was, I don't know, you're going to have to ask my dad. He testified at trial that he not the son, that he oversaw the day-to-day operations, that his father was rarely present, that he was the one who was physically present, and he gave this employee his task and work schedule, in addition to signing checks. Isn't all of that correct? Yes, Judge. I think merely signing the check, like I said, any random bookkeeper that an office may have would be on the hook for that. I don't think merely being the one who signs the check at someone else's direction, they're told who to pay it to and how much to pay it. He didn't make the decision on that. He's just doing what he was told. He was also the person who would implement what the rental rates for the hotel were, right? No, his dad, he and his dad would talk about it, but yes. Yes, so his father's rarely present. Who's the person who's really in the discussions with the father and is implementing that? If it was merely just the day-to-day operations of the hotel, absolutely. Sonny was the one that was, and in fact, Ms. Funderburk, the manager of the Foley Hotel he used to own, she said he ran the day-to-day part of the property. The issue is how much control he had over personnel and payroll. He didn't make decisions on how much somebody got paid. I'm going to jump to my other one because it's an important one, too. The trial court, at the outset of trial, there was a stipulation that he made that, one, that he believed- What the value of the lodging was. Yes. There's a stipulation, and as I understand the way stipulations work, stipulations relieve a party of the burden of proof as to the fact to which the parties have stipulated. That is correct. Which means that I would think that it was wrong for the district court not to include that value in the calculation of unpaid wages, but correct to include it for overtime pay. Yes. The problem is when you do the unpaid wages, it would greatly affect that $78,000 back pay. Right. In looking on the stipulations, because I was simply put in there, he didn't prove it. Your argument, though, it seemed to me about record keeping obligations and all that to me just seemed off base because what it seems to me, at least, is if the parties have stipulated to this, then that fact has been proved. That's why I said in my reply brief, we didn't have to prove anything because it was stipulated But I was trying to understand this argument about the effect of the stipulation. Like the chief judge, I think a stipulation relieves a party of the burden as to the matter that's agreed to, but it doesn't bind the court with regard to the legal effect of the stipulation, right? We have to decide whether or not the district court properly excluded the value of the lodging from one part and included it in another, but the parties didn't agree legally about what the effect of that value was, right? No, it is the judge's job to apply the law to the facts, and our argument is that, and this is de novo review for y'all, is that the court failed to apply the facts equally. No, I think that's right, but a party can ... You can't bind the judge to the law, but you can certainly give up a legal issue through a stipulation in saying, I agree that the law is this, or we're not fighting on this issue, or we're waiving this or that. That's not this case. It's just, here's what the value of the lodgings and other things were per day. Yes, Judge. That's what I'm saying. In fact, you quoted an actual 11th Circuit case in my preparation for this. I found some cases, because when I was trying to find something on stipulations, that's kind of like ... It seemed in my head like such a simple concept as kind of like trying to research, looking for a case that says the sky is blue, but there is a Supreme Court case that this court's adopted. I'm going to do a 28-J letter on it, but it's ... It's not really a proper 28-J issue. Sometimes we do ask for supplemental briefs, but when I hear ... I started doing more research after our oral argument was scheduled, so I can find some cases that I should have cited in my brief, that's really not what 28-J letters are for. That's fine. Fair enough. Can I ask you to address this question? I think I'm following you that the factual stipulation was that the value of the room was $89.95 per day. It seems like your opposing counsel's argument is that, nonetheless, as a matter of law, that's insufficient. Could you just address that? It seems like their position is that, as a matter of law, the employer has to keep the records to be able to benefit. What do you say about that? Administrative requirements from the NLRB is not the same as burden proof in front of the district court. This court didn't say ... This court said in the New Floridian case, y'all say, well, you have to prove the value, and then it says how you prove the value is normally do this. Well, if they stipulated to it, you don't have to prove it. It is correct, and if the NLRB wants to do an administrative punishment on Mr. Patel for not keeping records, that's fine, but when it comes to the stipulation of the fact, the scales of justice got ... There's a plate on each side of it, and the facts have to be administered equally between the two parties. I'm going to just save my 20 seconds for rebuttal. Okay. All right. Let's hear from Mr. Rosenthal. If it please the court, my name is Ian Rosenthal, along with Richard Fuqua, I represent William Spears. I should say that not only is it nice to be here in Birmingham today, but I'm greatly relieved that I'm not the one who went to Atlanta, because the odds were not in my favor. Even if it got you to the podium a little, or something similar. I'm just saying, I could put myself in that car driving the wrong way. When Mr. Spears was hired by Mr. Patel Sr. and Mr. Patel Jr. to work in, at that point, a couple of different hotels in South Baldwin County, he was essentially homeless, and the that would never have equated to minimum wage, and he worked a ton of overtime hours. All of that is an employment arrangement that they had control over. There are, to get to the lodging credit issue, there are explicit regulations that an employer has to follow, so that it can take a credit for the value of lodging or meals that it provides. The problem is, you stipulated to the value. What is very clear in the joint pretrial document, is that we stipulated to the amount to be included in the regular rate, and if you look at 29 CFR 778.116, it is explicit that a fair value must be included in the regular rate, which is different and distinguished in this at the district court level, like nail versus ship. So you're, it seems like what you're trying to say is that you just stipulated it for the overtime issue, but not for the minimum wage issue. Is that what you're trying to say? I would tweak it a little bit, in the sense of this. What the regular rate is, only matters for the overtime issue, because you got to multiply something by 1.5. Otherwise, you're talking about how much did you actually get versus minimum wage. So to that extent, we needed to have a regular rate. If they had not stipulated to what amount should be included in the regular rate, we would have had to prove it. We would have had to prove it using, frankly, the Mount Clemens and Anderson estimate, because they didn't produce any records. But why isn't that work on the flip side, too? For the minimum wage claim, they would have had to prove this lodging credit through their record keeping and whatnot, but since you stipulated to it, they don't have to prove it anymore. Well, because this court has said it's different. If you, in this sense, in New Floridian and in Carro-Galvin, what this court said was it is the employer's burden to establish entitlement to a credit for what it wants to have counted as wages paid. But you stipulated to what the value was. So that it could be included in the regular rate, and think, I would suggest that you think about it. Let me just, there's a confusion that I have about the stipulation. So I thought, based on your brief, that when I looked at the stipulation, I was going to see just for the overtime claim, we agree that it's $89.95. But actually, on your stipulation, on page 6 of the stipulation document 99, you say for the minimum wage claim, the parties agree that these lodging accommodations had a minimum value of $89.95 per day. What was the point of even including that under the minimum wage claim, if it didn't have anything to do with the minimum wage claim? It is a legitimate question. I cannot, frankly, put my mind back in where we were in negotiating the joint pretrial document then. You will note that on the same page, if I'm shouting, I apologize, adjusting to the mic, in the disputed facts section, immediately that follows, it says that the plaintiff denies that the lodging can be credited toward minimum wage. The legal elements of this issue are discussed in more detail below, and then we went through your stipulation. The way I understand this, and just correct me if I'm wrong, but the way I understand this dispute is that you both, you agreed, everybody agreed that this $89.95 value was the value of the lodging, but your contention was that even if that was the value and you agreed to it, it didn't matter because it was still the defendant's. The defendant couldn't get that credit without following the record keeping. Correct. There's a difference between, I suggest to you, the fair value in the world of something versus the actual credit an employer can take through the administrative process or through the regulations. It makes some sense . . . It seems to me the problem is one of the fact law distinction that Judge Jordan was mentioning earlier. The fact that has to be proved is the value of the lodging and the party stipulated to it. The legal effect of that is for the court to decide, but once that fact is stipulated, I don't understand why if it applies, if that fact has been stipulated for the calculation of overtime, why it's not also available for the calculation of minimum wages. It's just a fact stipulation. That's what you stipulate. That's what stipulations are about. Sure. I think the distinction is this, and I would go at it in two ways, both in the real world when you go to work for somebody and separately and maybe more importantly for your purposes in the regulatory world where the Department of Labor is overseeing this. So let me do it both ways. From the Department of Labor standpoint, and this is also reflected I think explicitly in New Floridian, an employer is not supposed to be making a profit by saying we are providing lodging. They are doing it at cost, and they are supposed to show their cost. The regulations that provide for what you do to show your credit involve very detailed allocations of what you're actually spending. When you make a presentation to the administrator of the Wage and Hour Division, backed by records, you show a very detailed calculation of what is the cost to the employer, and that's the credit they get. In the real world, if I'm going to work for somebody and the deal is we're going to pay you X and give you a place to live, there are obvious dramatic differences in the quality of the lodging. And keep in mind that in the real world, if you are getting paid with lodging, it really affects what an at-will employment relationship looks like on the ground. All of a sudden, quitting involves moving out. Getting fired involves being evicted. So there are not a ton of cases on these subjects, but one of them points out that I'm sure we didn't cite it. It's from a district court, I believe in Connecticut, so it has no residential value here. It would only matter, excuse me, the actual amount changes how much overtime pay you're entitled to, because it affects the regular rate. The value of the lodging on a weekly basis can't change what happens at a minimum wage level. If it's worth $100 a week, if it's worth $500 a week, that doesn't change with how many hours you work. What it impacts is how much overtime pay are you due and entitled to, because that's based on 1.5 times the regular rate, and the regular rate has to include the fair value of the lodging. Let's talk about what Donovan says, our precedent, okay? It says that when a court calculates back wages and employees owed under the Act, quote, the employer's entitled to our credit for the reasonable cost of providing meals and lodging, right? Yes. Now, it also says, look, an employer's unsubstantiated estimate of his cost, where the employer has failed to comply with record-keeping provisions, and where there's been no determination of reasonable cost by the wage and hour division, does not satisfy the employer's burden of proving reasonable cost. But the problem here is this isn't unsubstantiated, because the party stipulated to the value here, which relieves the employer of the burden of proof of that fact. And because of that, then we go back to what I read earlier from Donovan. The employer is entitled to a credit for the reasonable cost of providing the lodging. He's proved what the value is. So what am I missing? Well, first, I think part of what is responsive to your comments is found in footnote 12 of the New Floridian case, where it fairly explicitly distinguishes between what the employee has to show, which is, in substance, that the employee was not compensated the amount they had to do under the Wage and Hour Act, versus what the employer then has to show to meet its burden. I would also suggest you- But you stipulated to what the employer has to prove. Yeah, we stipulated- Let me ask it this way. Yes, sir. Assume a different record, okay? And let's say that the employer in this case had every record under the sun to satisfy the regulations, the statute, and everything else. They come into trial. They put on all of the records. It's pristine. And they show, if you believe their evidence, that the value is $130 a day. What's the effect of the stipulation? If I understand your hypothetical, the stipulation is identical. The employer's showing as to their burden is different. The stipulation is what it is. It's stating whatever. And then they come in, and with all the documentation you could ask for under the FLSA and its regulations, they produce evidence that it's really worth $130. What happens to the stipulation? I think if the stipulation amounted to that the party stipulated that the regular rate came to- No, no, no. Same stipulation is here. The value is- Whatever it was. $630 a week. The stipulation is the value of lodging was $89 a day. And the employer comes in and proves, if you believe its evidence, that the value at cost was really $130 a day. And it wants the higher number to get the bigger credit. What happens to the stipulation? The stipulation, I would suggest, would be applied as stipulated. Meaning that consistent with 29 CFR 778.116, the fair value of $89.95 a day, $630 a week, is the number that is included in the regular rate. And then the employer, if I remember his number in your hypothetical, has shown entitlement to a credit of $130 a week. And the difference is factored into what the damages are. So that's odd because it seems like you could draft a stipulation that way, I guess. I mean, I think you could draft a stipulation that says the parties for the purposes of assessing overtime have agreed to $89.95, but the parties for assessing minimum wage have not agreed to any amount. I mean, it seems like, I mean, it's the same, sort of the same issue. But it seems like you could draft one that way. The problem I'm having is that this stipulation isn't drafted that way. You just agree to the amount. So why would you do that sort of, you get the stipulation over here, but not over here when the party's just stipulated to the fact? So in this case, and from a practical standpoint, what Judge Cassidy, and I suspect every district court requires, is that you identify disputed and undisputed issues, factual and otherwise. If the defendants had not stipulated to the $630 amount, we would have had to prove a fair value. What we would have done is taken the defendant's discovery responses to the courts interrogatories that had that $630, $89.95 a day figure, and we would have presented that as our evidence of what that amount should be. The defendant chose not to dispute that. They chose to stipulate it, which makes some sense. Which means you stipulated to it, too. I mean, it works both ways. We had to prove it otherwise. They stipulated to it. They had to prove it otherwise. They had a burden to prove that fact for a different reason, and you stipulated to it. They had to prove. It works both ways, doesn't it? That's the point of a stipulation. The regulations that apply to the employer's credit for a cost or an administrator's determination do not provide the same, automatically provide for the same math as the fair value, but I would say in the real world, an employer that is interested in complying with the FLSA that goes to the administrator and goes through this process and gets a $130 a week figure, is then going to adjust what it pays people for. It is going to use that $130 figure on both ends. What is screwed up here is that since the employer did nothing and then provided that $630 value as an interrogatory response about fair value, we then use that, well, they stipulated to it, but otherwise we would have offered the same evidence on what we had to prove and they had nothing on what they have to prove under the burden shifting, under their own burden. It's not a burden shifting. It's just tracking New Floridian. It's tracking Carol Galvin, and to the extent that what you're faced with is the record here on the procedural posture here. Mr. Rosenthal, your time has expired. I'm not sure we're getting much of anywhere. Thank you for your time. Thank you. Mr. Hunter, you have five minutes. I hope not to talk that long. The only rebuttal I can do is based off the stipulation issue, so I'm just going to be very quick. Judge Jordan, your court has already answered your hypothetical about if there's a stipulation, but the facts prove a higher number. And the facts, my memory of the transcript is, they came up with that $89 a night number because that's the snowbird rate. That's the off-season rate for his hotels. How does that tell us what the answer is? You started with how our president answers Judge Jordan's question. Yeah, I was telling you that's how they came up with the 90, and so I was chasing that rabbit real quick. I'm back on it. Cooper versus United States, luckily my CJA work came in handy today. Cooper versus U.S. in 2016, Your Honor, Judge Pryor was on that per curiam opinion. There was a stipulation by the government and by the defendant as to some facts, and during the appeal, the feds tried to argue that the defendant's testimony contradicted the stipulation, and this court said, even if the evidence contradicts the stipulation, the stipulation controls. That's your answer. It's 660 Fed Appendix 730 at page 734. If you're good with that, I'm going to sit down. Mr. Do you have any questions? No. Thank you, Mr. Holmes. Thank you, Judge.